EMILIO OCASIO SOLÍS ET AL., Complainants and Appellees, v. FEDERICO CORDERO, MAYOR OF THE MUNICIPALITY OF CAROLINA, Respondent and Appellant.

No. 18. Argued December 1, 1947.—Decided December 12, 1947.

*Rafael Rivera Zayas* and *Rubén Gaztambide Arrillaga* for appellant. *Rafael Rodríguez Ema* and *R. García Mújica* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The Municipal Assembly of Carolina, which is composed of eleven members, removed Federico Cordero, Mayor of said Municipality, by virtue of six charges preferred against him by Emilio Ocasio Solís, Municipal Treasurer. A hearing was held and after finding, by a vote of six to five, that three of the charges had been proved, the Municipal Assembly removed him. The Mayor appealed to this Court and assigns in his brief ten errors.

If the second or third assignment should prove to be reversible error, the other assignments, in our opinion, need not be considered, inasmuch as the vote being six in favor of removal and five against it, the disqualification of one or two of the assemblymen would be sufficient to annul the decision rendered by the Assembly. We shall now consider said assignments, which read thus:

"SECOND ERROR: The Municipal Assembly of Carolina committed error in adopting the decision removing the respondent with the vote of assemblyman Guillermo Rodríguez, notwithstanding the fact that the latter had been impeached and that he had expressly stated his intention of convicting respondent before passing on the evidence supporting the charges.

"In the final vote on the motion to remove respondent, the result was six in favor of, and five against, removal, the aforesaid assemblyman having voted in favor of the removal of the mayor, after having refused to disqualify himself at the request of the respondent-appellant, thereby depriving the latter of a fair and just trial.

"THIRD ERROR: The Municipal Assembly of Carolina committed error in adopting the decision removing the respondent from his office with the vote of assemblyman Manuela Betancourt de Conde, notwithstanding the fact that the respondent introduced evidence of

the latter's prejudice and that by the intervention of said assembly-man the respondent was deprived of a just and fair trial."

 At the beginning of the hearing, Attorney Rubén Gaztambide Arrillaga, respondent's counsel, asked leave of the assembly to examine the assemblymen "for the purpose of finding out their mental attitude and disposition in·the present case in order to ascertain absolute impartiality." Leave was granted and, upon examining Assemblyman Guillermo Rodríguez, the following took place, as it appears from pages 12 to 15 of the transcript of the evidence:

"Q. Do you know some of the facts of the charges which shall be discussed tonight?

A. I have some charges in my possession.

Q. *Have you made up your mind as to these charges?*

A. *Yes, sir.*

Q. If you have your mind set as to his guilt, what is your opinion?

A. Sir, the opinion I have is that I have some sworn charges in my possession which have been read in public. These charges are connected with the municipal interest and I am a man who from the moment that I took charge of my position I have been getting acquainted with my duties towards the money of the 'People of Puerto Rico' and you must know that the only weapon which can protect the interest of Puerto Rico is an Assembly and therefore I vote against the Mayor.

Q. *Are you going to vote against him?*

A. *Yes sir, for those reasons.*

\* \* \* \* \* \* \*

A. Counsel did not let me finish.

Mr. President: Has Mr. Rodríguez finished with his answer?

A. Yes, sir.

Mr. President: The assemblymen may and must answer the questions put by Attorney Arrillaga. Attorney Arrillaga, you may continue.

Q. Did you say that I did not let you finish?

Attorney Rivera Zayas: He said he had finished.

Q. Did you say that you have your mind made up with respect to these charges? That you had a set opinion as to these charges?

A. I said that I am a reliable man in the position I hold—my position as assemblyman.

Q. Within that honorability, within your mark of honor *I wish to know specifically with absolute certainty whether or not you believe that this man is guilty?*

A. *But that is already written.*

Q. I want to know if you have decided that Cordero is guilty. I ask you whether or not it is true that you think that Mayor Cordero is guilty.

A. *I think he is guilty.*

Q. In good faith?

A. Yes, sir.

Q. Why?

A. Because of the charges.'' (Italics ours.)

Pages 15 to 58 of the transcript contain the examination to which the other assemblymen were subjected and on page 59 Attorney Gaztambide again examines Mr. Guillermo Rodríguez thus:

''Q. Mr. Guillermo Rodríguez, after your answers to the examination of Mr. Cordero's attorney are you willing to disqualify yourself or do you wish to sit in the case?

A. I do not want to disqualify myself. What does that word mean?

Q. To disqualify means to abstain from acting. Not to act.

A. I must act.

Q. Do you wish to see the charges?

A. Yes, sir.

Q. Are you interested in seeing them?

A. Yes, sir.

Q. Are you very much interested?

A. Yes, sir. That is all.''

It was not until this moment that Attorney Coll Moya, one of the complainant's attorneys, examined assemblyman Rodríguez thus:

''Q. Will Mr. Rodríguez tell me if once he has heard the charges, that is, once he has heard the witnesses testify with respect to these charges and once the investigation is finished if you could reach an impartial decision as to whether the mayor is guilty?

A. Yes, sir.

Q. If the charges are not proven as true, if the evidence does not sufficiently prove the guilt of the Mayor, would you acquit him?

A. Certainly, I would acquit him.

Q. If they are proven true would you convict him?

A. Yes, sir, that is my duty.

\* \* \* \* \* \* \*

Q. Is your mental attitude such that you can render a verdict based solely on the evidence presented?

A. Yes, sir.

Q. If that evidence were weak and nonsupporting, would you acquit the Mayor?

A. Yes, sir.

Q. If it were strong, would you convict him?

A. Yes, sir.

Q. Would your decision depend on the evidence?

A. On the evidence only.''

Upon being examined again by the Attorney Gaztambide he said:

''Q. Mr. Rodríguez, why did you first say, upon being examined by the attorney, that you had your mind made up, that you were going to convict Federico Cordero and why do you now change your mind?

A. That was based on this. (He shows the charges).

Q. You told me that you would convict him anyway? Is it true that you have changed because your colleague assemblymen told you to change?

A. *I* have not spoken to anyone.

\* \* \* \* \* \* \*

Q. Mr. Rodríguez, is it not true that besides speaking of the weather and of this and that, Mr. Landrau told you that you should vote according to the evidence?

A. That was my verdict. I told you, you did not let me finish and I was going to tell you that according to the evidence.

Q. Did the gentleman tell you before you said it that it was according to the evidence?

A. If he said it, I did not pay any attention.

Q. Did he say it before you did?

A. When was that?

Q. When I first asked you, you said that you were willing to

convict him, my colleague Coll Moya interrupted and also Mr. Juan Trujillo and at that very moment when my colleague Coll Moya and I renewed the discussion, Mr. Landrau told you: 'say that according to the evidence.'

A. I spoke with this lady as to the heat. As to Mr. Landrau, I told him I had not finished. Then you asked me if I had finished and I said yes.

\* \* \* \* \* \* \*

Q. After all this incident did Attorney Rodríguez Ema give you any instructions?

A. No.

Q. A gentleman sitting next to Mr. Coll Moya, did he come to you?

A. He did not speak to me. He was speaking with Oscar. Not with me.'' (Italics ours.)

At the close of this examination Attorneys Gaztambide and Rivera Zayas, counsel for the respondent, made sworn statements as follows:

### RUBÉN GAZTAMBIDE ARRILLAGA
(States Under Oath)

My name is Rubén Gaztambide Arrillaga. I am attorney-at-law. Upon being duly sworn before this Assembly I state that I saw when Mr. Landrau, rather I saw and heard, that Mr. Landrau told Mr. Guillermo Rodríguez, Municipal Assemblyman, to testify that he would decide according to the evidence. I also swear that I saw when Mrs. Manuela Betancourt de Conde did it. That I cannot swear with respect to Attorney Rodríguez Ema because I did not see him. My colleague Rivera Zayas saw him. That is all.

### RAFAEL RIVERA ZAYAS
(States Under Oath)

My name is Rafael Rivera Zayas: I am one of the attorneys for the respondent in this case. I am sure and I swear that during the recess of the Assembly, Assemblyman Mr. Landrau and my colleague Rodríguez Ema spoke to assemblyman Rodríguez and told him that he should testify that he would act according to the evidence. I got up and told Attorney Rodríguez Ema that I was sorry but that I had to make this question clear in the record.

ON CROSS EXAMINATION

by Attorney Coll Moya:

"Q. Do you know if Mr. Rodríguez heard that statement?

A. I have not any doubt because he has good hearing.

Q. How do you know that he heard? Are you a doctor?

A. No, sir.

Q. Are you an attorney-at-law?

A. Yes, sir.

Q. How do you know that he heard?

A. Because I have spoken with Mr. Rodríguez and I know that he can hear perfectly well because he answered what I asked him, and since he was so near to the persons I mention, Attorney Rodríguez Ema and Assemblyman Landrau, he had to hear them.

Q. You think he must have heard?

A. No. I noticed it.

Q. Do you know if those statements were made?

A. I noticed it by my sense of sight and hearing which is still better."

Attorney Rodríguez Ema, complainant's attorney, in turn testified:

"Q. Did you hear what Attorney Rivera Zayas stated?

A. Yes, sir.

Q. Is it true that he called your attention that you should not give instructions to the assemblyman?

A. Yes, sir.

Q. When Mr. Rivera Zayas spoke to you were you giving instructions to the assemblymen?

A. No, sir.

Q. What did you answer Mr. Rivera Zayas?

A. I do not know, I do not remember whether I answered him. If I did it was a denial.

Q. Did you tell Mr. Rivera Zayas that you were not giving any instructions?

A. I think I told him that I was not giving any instructions. I am sure that I was not giving any instructions to this gentleman whom I do not know."

As it may be seen, the examination of assemblyman Rodríguez consists of two parts, first, the one where he categorically states that he has his mind made up as to the

charges; that he was going to vote against respondent; that as to the guilt of the respondent "it was already written"; that he thought he was guilty and, the second, where after a long lapse of time during which the examination of the other assemblyman took place and after Mr. Rodríguez had stated that he did not wish to disqualify himself in the case, he testified that what he meant to say previously was subject to what the evidence should prove. And it is with respect to this second part of Rodríguez' examination that Attorneys Gaztambide and Rivera Zayas stated under oath that they heard when assemblyman Rodríguez, during a recess, was advised to say that he would act "according to the evidence."

We have decided that once a municipal assemblyman is impeached and his disqualification is sought to hear the charges preferred against the mayor because he is prejudiced, if the evidence shows that said assemblyman should have disqualified himself but did not do so this Court may reverse the decision of the assembly if it believes that the respondent was really prejudiced by the bias and partiality of said assemblyman. *Municipal Assembly* v. *González, Mayor,* 55 P.R.R. 526.

As to assemblyman Rodríguez the evidence of his prejudice consisted, as we have seen, in his own testimony. No better evidence could have been presented, for as we said in the *González* case, *supra,* "The evidence of statements made by *other* people should be strong and robust and be accompanied by circumstances guarantying its authenticity *since it is very easy to impute to another any statement . . ."* (Italics ours.) But this case does not deal with statements made by other persons but by the assemblyman himself who manifestly showed his prejudice.

We have no doubt that the answers given by assemblyman Rodríguez in his original examination, show what they say in themselves, to wit, that he had his mind made up as to the charges, that he intended to vote against the Mayor, that

his guilt "was already written"[1] and that he considered the Mayor guilty. It is true that later he tried to change his statements by saying that he would decide the case according to the evidence, but if we take into consideration the statements of Attorneys Gaztambide and Rivera Zayas as to what took place during the recess of the assembly, we cannot believe the latter statements of said assemblyman. The decision of the assembly by virtue of a six to five vote, shows the importance, in this particular case, that the intervention of each one of the members of the assembly, in acting as judge in the case, be free from all kinds of prejudices. Notwithstanding the efforts made by appellee to show that the answers given by Mr. Rodríguez were due to his lack of academic preparation, we must presume that he understood the questions put to him and that he answered them with full knowledge of the meaning of his own words.

Appellee further argues that if the evidence introduced was sufficient to support the charges, the action of assemblyman Rodríguez cannot prejudice the respondent. But the one called upon to decide at first instance, whether or not the evidence is sufficient, is precisely the Municipal Assembly, and if one of its members, whose vote was decisive in this case, made up his mind and stated that he considered the Mayor guilty, that it "was already written", his intervention had necessarily to be prejudicial to the respondent. This is not a case of a situation similar to that in the *González* case, *supra,* where the prejudiced evidence was hearsay and doubtful, but of a conclusive admission on the part of the assemblyman of the prejudice against the respondent.

As to the third error assigned, although there was some evidence that assemblyman Mrs. Conde publicly stated that the assembly would remove respondent for the charges preferred against him, she denied having made such a statement

---

[1] The words "It was written", as an expression means "Fate had so provided."—*Diccionario Lengua Española de la Real Academia Española.*

and at all times insisted that she would decide them according to the evidence presented.

We are of the opinion that since it was shown that the assemblyman, Mr. Guillermo Rodríguez, should have disqualified himself in this case but failed to do so, his intervention therein prejudiced the respondent. The decision of the Municipal Assembly removing the respondent Federico Cordero as Mayor of Carolina, is reversed.

Mr. Chief Justice Travieso did not participate herein.